UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOEL ZELLMER,

             Petitioner,

v.

DONALD R. HOLBROOK,

             Respondent.

CASE NO. C17-1776 RSM-BAT

**REPORT AND RECOMMENDATION**

Petitioner Joel Zellmer seeks 28 U.S.C. § 2254 habeas relief from his 2010 jury-trial conviction for second-degree murder of his three-year old stepdaughter. Although his petition presented three fully exhausted grounds for relief, Mr. Zellmer disputes the State's position only on ground one: whether he should be granted an evidentiary hearing in state and/or federal court to develop the factual basis for his claim that the State violated a clearly established, Sixth Amendment right to counsel by seizing documents subject to the attorney-client privilege in the course of the investigation. Dkt. 27, at 1–2.[1] Mr. Zellmer has failed to demonstrate that the

---

[1] Mr. Zellmer's petition presented three grounds for relief: (1) violation of the right to counsel (invasion of attorney-client privilege without waiver); (2) violation of the right to counsel via *Massiah v. United States*, 377 U.S. 201, 206 (1964), by having an informant solicit incriminating statements; and (3) improperly admitting unreliable expert testimony and non-testifying expert opinions. Dkt. 1, at 5, 7, 8. Nonetheless, in responding to the State's briefing, Mr. Zellmer refers to the State's arguments and states that only ground one is disputed. Dkt. 27, at 1–2. With respect to grounds two and three, the Court finds that Mr. Zellmer has failed to demonstrate that the

REPORT AND RECOMMENDATION - 1

adjudication of his claims based on the state-court record resulted in a decision "contrary to" or "involv[ing] an unreasonable application" of federal law as determined by the Supreme Court, or that the adjudication "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). The Court therefore recommends that his habeas petition be denied on the merits and his request for an evidentiary hearing be denied.

## BACKGROUND

In 2003, Mr. Zellmer's three-year old stepdaughter A.M. drowned in the family swimming pool about three months after Mr. Zellmer married her mother. Dkt. 22-5, at 43. Mr. Zellmer claimed that he found A.M. floating in the deep end of the pool while A.M's mother was at work. *Id.* Before the drowning, Mr. Zellmer had persuaded A.M.'s mother to take out a $200,000 insurance policy on A.M.'s life. *Id.*

In 2005—about two years after A.M. drowned, but 2 years before Mr. Zellmer was charged with murder—police officers executed a search warrant and obtained large volumes of documents from his home. Dkt. 9, at 38. At the time of the search, the officers knew Mr. Zellmer was involved in judicial proceedings and a labor and industries dispute. *Id.* In addition to divorce and custody proceedings, A.M.'s mother had sued Mr. Zellmer for wrongful death. *Id.* The officers therefore took precautions to scan and segregate privileged documents without reviewing them. *Id.* The State permitted Mr. Zellmer's attorney to review the seized documents and identify those that were privileged or beyond the scope of the warrant. *Id.* The court then appointed a special master to review items that Mr. Zellmer's attorney alleged contained

---

state-court's decision was unreasonable on the facts or law, or that he suffered actual prejudice as a result. 28 U.S.C. § 2254(d)(1)–(2); *Brecht v. Abrahamson*, 507 U.S. 619, 637–39 (1993).

REPORT AND RECOMMENDATION - 2

1  privileged materials. *Id.* at 37–38. The investigators never looked at the challenged documents
2  again. *Id.* at 38. Detectives had, however, discovered a brief document entitled "accident.doc" on
3  Mr. Zellmer's computer that explained how his step-daughter had accidentally drowned—an
4  account that was different from other statements made by Mr. Zeller—and, though the document
5  did not appear to be privileged and did not contain any language that suggested it was written for
6  a lawyer, it nonetheless was deemed to be privileged, was excluded, and was not forwarded to
7  the prosecutor's office. *Id.* The State also obtained an insurance file from Mr. Zellmer's
8  homeowner insurance carrier in which Mr. Zellmer told his insurance company a different
9  version of events than he alleged in the criminal case. *Id.* at 38.

10       The trial court deemed all disputed materials privileged and excluded them from trial,
11  including the insurance file. *Id.* The court concluded that the State had not gained any benefit
12  from seeing the short "accident.doc" or the insurance file because the State already had other
13  evidence of Mr. Zellmer's inconsistent versions of events. *Id.* at 38–39. Moreover, the court
14  found that the State had affirmatively shown lack of prejudice to Mr. Zellmer. *Id.* at 39. Thus, in
15  sum, the trial court excluded any allegedly privileged material from trial and denied Mr.
16  Zellmer's motion to dismiss the criminal case because the State had shown lack of prejudice. *Id.*

17       In state court, Mr. Zellmer challenged the trial court's handling of the attorney-client
18  privileged documents on direct appeal and in his personal restraint petition ("PRP"). Dkt. 1, at 5.
19  He was denied relief on direct appeal and in his collateral attack on the conviction. During the
20  pendency of his PRP, Mr. Zellmer asserted that he had obtained hundreds of new documents via
21  Public Records Act lawsuits, including photographs of plainly labeled banker boxes full of
22  litigation records related to A.M.'s death. Dkt. 27, at 8–9. In dismissing his PRP, the state court
23  of appeals addressed those new documents:

REPORT AND RECOMMENDATION - 3

> Zellmer asserts in his reply brief that he has obtained new evidence demonstrating that the State deliberately intruded on his attorney-client relationships and then unlawfully withheld evidence of this intrusion from the defense. But as these arguments are raised for the first time in his reply, they are too late. *In re Pers. Restraint of Peterson*, 99 Wn. App. 673, 681, 995 P.2d 83 (2000). In any event, the evidence he supplies does not undermine the trial court's or this court's conclusion that there was no deliberate and egregious intrusion.

Dkt. 22-5, at 23 n.2. In denying review of his PRP, the state supreme court commissioner noted:

> [T]he trial court . . . excluded records obtained from Mr. Zellmer's residence that it deemed privileged. Mr. Zellmer's assertion that the State obtained and used privileged information by way of . . . the seized documents is too speculative to justify a reference hearing. Furthermore, the State did not engage in actual eavesdropping with defense counsel, as occurred in [*State v.*] *Peña Fuentes*, 179 Wn.2d [808,] 816–17 [(2014)].

Dkt. 22-5, at 47–48.

On federal habeas review, Mr. Zellmer states: "The issue in Zellmer's petition is whether the State is entitled to seize, access, and review prior confidential records between a lawyer and client." Dkt. 27, at 17. Although Mr. Zellmer concedes that "[i]t is clear that the special master resolved any question as to the use of such documents in trial," he contends that "it is not clear, and could not be clear on the state's record, whether state investigator[s] or attorneys obtained an impermissible benefit from their acquisition and review *prior to the order appointing the special master*." *Id.* at 18 (emphasis added). For habeas relief, Mr. Zellmer asks that the state court be ordered to engage in "an authoritative fact resolution of the deliberateness, scope, and impact of the State's invasion of Zellmer's privileged attorney-client communications," which would include reviewing the newly released records and inquiring into "the investigators' and prosecutors' mental impressions." *Id.* at 19. Mr. Zellmer also and alternatively requests a federal-court evidentiary hearing under 28 U.S.C. § 2254(e). *Id.* at 12.

REPORT AND RECOMMENDATION - 4

**DISCUSSION**

Although he asserted a violation of the Sixth Amendment right to counsel in his habeas petition, in his responsive brief Mr. Zellmer instead argues that the possible violation of the attorney-client privilege alone—regardless of whether it arises under state law and whether any potential harm has been addressed or cured by the state trial court—constitutes "an unconstitutional intrusion past the seal of secrecy." Dkt. 27, at 27. Mr. Zellmer's contention that a purported violation of the attorney-client privilege is a de facto federal violation or a violation of the right to counsel is fatally flawed because (**1**) the Supreme Court has never equated a speculative violation of state-law attorney-client privilege with a violation of federal law or the Constitution; (**2**) even if such a clearly established right existed, he has not demonstrated how the state court misapplied federal law regarding attorney-client privilege; (**3**) he has failed to show that the state court made an unreasonable determination of the facts in light of the evidence; (**4**) federal-court review of his legal claim is limited to the record before the state court, his claim is futile, and he has provided no persuasive reason that he should be afforded a state or federal evidentiary hearing to explore how allegedly privileged documents excluded from use at trial unconstitutionally altered the prosecution's trial strategy.

**1. No Clearly Established Supreme Court Precedent**

Mr. Zellmer equates any invocation of the attorney-client privilege, which here arises under state law, with a de facto violation of federal law or the Constitution. That supposition is neither persuasive nor supported.

First, Federal Rule of Evidence 501 provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Mr. Zellmer's habeas petition is a civil case challenging the constitutionality of his

state criminal proceeding. Washington state law therefore governs privilege in this case. Because state law applies, Mr. Zellmer's citation to federal common law noting the venerable nature of the attorney-client privilege is inapposite. Dkt. 27, at 12–17 (citing *Hunt v. Blackburn*, 128 U.S. 464 (1888), and *Swidler & Berlin v. United States*, 524 U.S. 399 (1988)). Mr. Zellmer cites no support for the proposition that a purported violation of state-law attorney-client privilege violates the federal, common law recognition of the attorney-client privilege. No federal-law violation is implicated here.

Second, Mr. Zellmer has not and cannot support his conclusory supposition (that was abandoned in his responsive briefing) that an alleged violation of the attorney-client privilege means that his clearly established Sixth Amendment right to counsel was also violated. The Supreme Court has restricted "clearly established Federal law" under 28 U.S.C. § 2254(d)(1) to "'the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). No Supreme Court case has addressed the proposition that officers executing a valid search warrant violate the Sixth Amendment right to counsel by collecting documents purportedly protected by the attorney-client privilege. And the Supreme Court has expressly rejected a per se rule that governmental intrusion into attorney-client communications establishes a Sixth Amendment violation of a defendant's right to counsel.[2] *Weatherford v. Bursey*, 429 U.S. 545, 552 (1977).

---

[2] The state appellate court cited *Weatherford* for the same proposition when rejecting Mr. Zellmer's arguments on direct appeal. Dkt. 9, at 31–32.

REPORT AND RECOMMENDATION - 6

No Supreme Court authority exists to support the proposition that the State's seizure of documents purportedly protected by state law on attorney-client privilege equates with a violation of federal law or the Constitution.

### 2. No Misapplication of Federal Law

Mr. Zellmer speculates that the prosecution gained an unfair advantage because the same officers and attorneys who may have handled privileged documents were not prohibited from working or consulting on the case and may have conferred an unfair, strategic advantage to the prosecution, although the privileged materials were never used at trial. Even presuming, contrary to Federal Rule of Evidence 501, that federal privilege law applies here, Mr. Zellmer has failed to show that the State violated his clearly established attorney-client privilege.

The Supreme Court has explained that the attorney-client privilege does not "create a broad 'zone of silence' over" the subject matter of the communication. *Upjohn Co. v. United States*, 449 U.S. 383, 385 (1981). Rather, "[t]he privilege only protects disclosure of [the] communications [themselves]; it does not protect disclosure of the underlying facts," so long as the underlying facts can be proven without resort to the privileged materials. *Id.* Because the attorney-client privilege protects only a communication between an attorney and a client, not the facts that are communicated, the State was free to create a trial strategy and to question witnesses about the prosecution's underlying theory of the case: that Mr. Zellmer told multiple, inconsistent versions about what happened the night A.M. drowned and that it had been his plan all along to murder his stepdaughter and collect the insurance money. Mr. Zellmer acknowledges that the special master resolved the use of any then-disputed documents at trial and that the documents disclosed via the public records request were in the special master's control and were never used at trial. Dkt. 27, at 2, 18. The prosecution established its case without use of or

REPORT AND RECOMMENDATION - 7

reference to purportedly privileged material. The state appellate court did not violate federal law on attorney-client privilege by concluding on PRP review that the new evidence Mr. Zellmer supplied did not undermine the trial court's or its own conclusion that there was no deliberate and egregious intrusion, Dkt. 22-5, at 23 n.2, nor did the state supreme court violate federal privilege law by concluding on PRP review that Mr. Zellmer's claim—that the State obtained and used privileged information by way of records clearly excluded from trial—was too speculative to justify a reference hearing, Dkt. 22-5, at 47–48.

### 3. No Unreasonable Determination of the Facts

Mr. Zellmer has not meaningfully attempted to demonstrate that the state court adjudication "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Mr. Zellmer does not dispute that the trial court excluded any allegedly privileged material from trial and denied Mr. Zellmer's motion to dismiss the criminal case because the State had shown lack of prejudice. *Id.* There is no indication from the record that this was an unreasonable determination of the facts and there is no reason to follow Mr. Zellmer down the rabbit hole of speculating about the value of undisclosed evidence never used during trial.

### 4. No Basis for an Evidentiary Hearing

Mr. Zellmer asks the federal district court either to order the state court to hold an evidentiary hearing about the recently disclosed and allegedly privileged documents, or to hold a federal evidentiary hearing. Neither alternative is justified.

In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The statute bars consideration of evidence presented for the first time in federal court. *Id.*

REPORT AND RECOMMENDATION - 8

Moreover, an evidentiary hearing is rendered pointless by *Pinholster* if this Court determines that 28 U.S.C. § 2254(d) precludes habeas relief on the merits. *See Id.* at 203 n. 20 ("Because Pinholster has failed to demonstrate that the adjudication of his claim based on the state-court record resulted in a decision 'contrary to' or 'involv[ing] an unreasonable application ' of federal law, a writ of habeas corpus 'shall not be granted' and our analysis is at an end."); *see also, Sully v. Ayers,* 725 F.3d 1057, 1075-76 (9th Cir. 2013) (lower court did not abuse its discretion in denying evidentiary hearing on ineffective assistance claims that had been adjudicated in state court).

In his responsive brief, Mr. Zellmer makes clear that the only issue he is challenging is the state court's decision not to grant him an evidentiary hearing about newly disclosed evidence from his public records requests. Dkt. 27, at 2. Mr. Zellmer did not, however, present any of this new evidence to the state court because the state court determined it was both offered too late and would not alter the decision to reject his request for PRP relief. Dkt. 22-5, at 23 n.2; Dkt. 22-5, at 47–48. Mr. Zellmer has failed to justify why he should be afforded a federal evidentiary hearing because (1) the federal habeas statute bars consideration of evidence presented for the first time in federal court, and (2) an evidentiary hearing, in both state and federal court, would be futile because he has offered no cognizable ground for habeas relief.

## CERTIFICATE OF APPEALABILITY

A prisoner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of the petition only after obtaining a certificate of appealability ("COA") from a district or circuit judge. A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A prisoner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's

resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Under this standard, the Court finds that no reasonable jurist would disagree that Mr. Zellmer has failed to demonstrate that the State violated clearly established federal law by choosing not to afford him a full evidentiary hearing based on new, allegedly privileged evidence (under state law) that was excluded from use at trial. Additionally, no reasonable jurist would disagree that a federal court should not afford a petitioner a federal evidentiary hearing on a meritless claim with respect to evidence never properly presented to the state court. The Court therefore recommends against issuance of a COA. Mr. Zellmer should address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

## **OBJECTIONS AND APPEAL**

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **August 21, 2019.** The Clerk should note the matter for **August 23, 2019**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed **twelve (12) pages**. The failure to timely object may affect the right to appeal.

DATED this 7th day of August, 2019.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 11