UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOEL ZELLMER,<br><br>                  Petitioner,<br><br>v.<br><br>DONALD R. HOLBROOK<br><br>                  Respondent. | Case No. C17-1776-RSM-BAT<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION AND DISMISSING CASE |

## I.    INTRODUCTION

This matter is before the Court on the Report and Recommendation ("R&R") of the Honorable Brian A. Tsuchida, United States Magistrate Judge. Dkt. #29. The R&R recommends that the Court deny Petitioner Joel Zellmer's 28 U.S.C. § 2254 petition for habeas relief from his 2010 jury-trial conviction. Petitioner has filed Objections to the R&R, Dkt. #30, and Respondent opposes Petitioner's Objections, Dkt. #31. For the reasons set forth below, the Court adopts the R&R and denies Petitioner's habeas petition.

## II.    BACKGROUND

The Court incorporates by reference the background set forth in the R&R. Dkt. #29 at 2-5. In 2003, Mr. Zellmer's three-year-old stepdaughter A.M., died from drowning while under Mr.

ORDER ADOPTING REPORT AND RECOMMENDATION
AND DISMISSING CASE - 1

Zellmer's care. Dkt. #22-5 at 43. In 2005, two years before Mr. Zellmer was charged with murder, police officers executed a search warrant on Mr. Zellmer's home and obtained large volumes of documents. Dkt. #9 at 37. At the time of the search, officers were aware that Mr. Zellmer was involved in other judicial proceedings, including divorce and custody disputes as well as a wrongful death suit brought by A.M.'s mother. *Id.* at 36. To avoid breaching attorney-client confidentiality, the officers scanned and set aside potentially privileged documents without reviewing them.

The State allowed Mr. Zellmer's attorney to review the seized items and identify any documents that were either privileged or beyond the scope of the warrant. *Id*. The state trial court then appointed a Special Master to review materials designated as privileged. *Id.* at 37-38. Investigators never reviewed the challenged documents again. Two of the seized documents included a document on Mr. Zellmer's computer titled "accident.doc" that provided an account of how A.M. had drowned, as well as a file from Mr. Zellmer's homeowner insurance carrier regarding the carrier's obligation to represent Mr. Zellmer in a wrongful death case. *Id.* at 37-38. The "accident.doc" file and the insurance file provided accounts of A.M.'s drowning that differed from the account Mr. Zellmer alleged in his criminal case. Both documents were deemed privileged and excluded from trial. *Id.* The state trial court concluded that the State had not gained any benefit from seeing the "accident.doc" document or insurance file, since the State already had other evidence demonstrating Mr. Zellmer's inconsistent versions of events that was ultimately presented at trial. *Id.* at 38-39.

In 2010, a jury convicted Mr. Zellmer of second degree murder of A.M. Dkt. #1 at 1. Mr. Zellmer challenged the conviction on direct appeal and in a personal restraint petition ("PRP") in state court, claiming that the trial court mishandled the attorney-client privileged documents. *Id.*

ORDER ADOPTING REPORT AND RECOMMENDATION
AND DISMISSING CASE - 2

at 5. The state court denied Mr. Zellmer relief on direct appeal and in his collateral attack on the conviction. While his PRP was pending, Mr. Zellmer filed a Public Records Act request for production of all documents seized during the search. Dkt. #27 at 8. This request produced records that included photographs of plainly-labeled banker boxes of litigation records taken from Mr. Zellmer's home office that were not produced to defense counsel. *Id.* at 9. In withholding these records, Mr. Zellmer argues, his defense trial counsel was not aware of the depth of the State's intrusion into attorney-client privileged documents. *Id.* at 11 ("Zellmer's trial attorneys were kept in the dark about the full extent of the seizures and dissemination of records prior to the court's appointment of a special master.").

The Washington state court of appeals dismissed Mr. Zellmer's PRP and declined to hold an evidentiary hearing related to the public records request documents. The court concluded that his arguments regarding the public record requests were untimely, since he raised them for the first time in his reply. Dkt. #22-5 at 23. Moreover, the court found that documents obtained from the public records requests did not undermine the court's conclusion that there was "no deliberate and egregious intrusion" by the State into Mr. Zellmer's attorney-client privilege. *Id.* Similarly, the Washington state supreme court commissioner denied review of his PRP on the basis that "Mr. Zellmer's assertion that the State obtained and used privileged information by way of . . . the seized documents is too speculative to justify a reference hearing." *Id.* at 47-48.

Mr. Zellmer petitions this Court for federal habeas relief on three grounds: (1) violation of his right to counsel through the seized attorney-client privileged documents; (2) violation of his right to counsel through placing him with a jailhouse informant; and (3) improper expert testimony and non-testifying expert opinions. *See* Dkt. #1 at 5-8. In response to the State's briefing, Mr. Zellmer only disputes the State's position on the first ground: whether he was improperly denied

ORDER ADOPTING REPORT AND RECOMMENDATION
AND DISMISSING CASE - 3

a full evidentiary hearing at the state-court level to examine the extent of intrusion into his attorney-client relationship. Dkt. #27 at 1-2. Mr. Zellmer acknowledges that the Special Master resolved any question as to the use of the seized documents at trial. *Id.* at 18. However, he contends that "it is not clear, and could not be clear on the state's record, whether state investigator[s] or attorneys obtained an impermissible benefit from their acquisition and review prior to the order appointing the special master." *Id.* For that reason, he requests that this Court order the state court to undertake "an authoritative fact resolution" of the State's invasion of Mr. Zellmer's privileged communications and, or alternatively, order a federal court evidentiary hearing under 28 U.S.C. § 2254(e). *Id.* at 12.

### III. DISCUSSION

#### A. Legal Standards

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. *See* Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id.* "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court reviews de novo those portions of the report and recommendation to which specific written objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Habeas petitions are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2244, *et seq.* Under AEDPA, a petitioner is entitled to federal habeas relief only if s/he can show that the state court's adjudication of his or her claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable

ORDER ADOPTING REPORT AND RECOMMENDATION
AND DISMISSING CASE - 4

determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)-(2); *Greene v. Fisher*, 565 U.S. 34 (2011).

AEDPA creates a "highly deferential" standard for evaluating state court rulings and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). A state court's decision is contrary to clearly established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or arrives at a different result in a case that "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). "The state court's application of clearly established law must be objectively unreasonable, not just incorrect or erroneous." *Crittenden v. Ayers*, 624 F.3d 943, 950 (9th Cir. 2010) (internal quotation marks omitted). Furthermore, a federal court must "presume the state court's factual findings to be correct, a presumption the petitioner has the burden of rebutting by clear and convincing evidence." *Id.*

This standard is intentionally "difficult to meet," because habeas is intended to function as a "guard against extreme malfunctions in the state criminal justice systems, not as a means of error correction." *Greene*, 565 U.S. at 38 (citations omitted). A petitioner must therefore show that the "state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

**B. Habeas Relief for Violation of Attorney-Client Privilege**

Mr. Zellmer only disputes the State's position on his first ground for relief regarding the State's intrusion into the attorney-client privilege from the 2005 seizure of his records. *See* Dkt. #27 at 1-2. With respect to the other two grounds for relief, the Court agrees with the R&R's

ORDER ADOPTING REPORT AND RECOMMENDATION
AND DISMISSING CASE - 5

conclusion that Mr. Zellmer has failed to demonstrate that the state court's decision was an unreasonable application of law or unreasonable determination of the facts, or that he suffered actual prejudice as a result. Dkt. #29 at 2 (citing 28 U.S.C. § 2254(d)(1)-(2); *Brecht v. Abrahamson*, 507 U.S. 619, 637–39 (1993)).

Mr. Zellmer argues that the State's alleged intrusion into the attorney-client privilege amounts to "an unconstitutional intrusion past the seal of secrecy" in violation of his Sixth Amendment right to counsel. Dkt. #27 at 27. In recommending that the Court deny Mr. Zellmer's petition, the R&R found his argument "fatally flawed" for several reasons: (1) the Supreme Court has never equated a speculative violation of state law attorney-client privilege with a violation of federal law or the Constitution; (2) even if such a clearly established right existed, he has not demonstrated how the state court misapplied federal law regarding attorney-client privilege; (3) he has failed to show that the state court made an unreasonable determination of the facts in light of the evidence; and (4) he has failed to justify his entitlement to a federal evidentiary hearing. Dkt. #29 at 5. Mr. Zellmer objects to all four reasons. Dkt. #30. The Court will address each objection in turn.

1. Supreme Court Precedent

Mr. Zellmer objects to the R&R's determination that he failed to rely on clearly established Supreme Court precedent to show that the State's actions violated federal law or the Constitution. Dkt. #30 at 3. He contends that he raised the Supreme Court's decision in *Hunt v. Blackburn*. *Id.* (citing 128 U.S. 464 (1888)). While he acknowledges that *Hunt* is not a criminal case, he claims that it addressed the "necessity" that clients and attorneys have a "seal of secrecy" placed on their communications so as to ensure that the client is "free from the consequences or the apprehension of disclosure." *Id.* (quoting *Hunt*, 128 U.S. at 470–71). However, the R&R did acknowledge *Hunt*

and found the case inapposite. *See* Dkt. #29 at 6. This Court agrees. *Hunt*, a civil property case, discussed attorney-client confidentiality in the context of the evidentiary privilege wherein the client alone holds the privilege but may voluntarily waive it. *Hunt*, 128 U.S. at 470. It is neither factually similar to the facts of this case, nor does it support Mr. Zellmer's proposition that any invocation of state attorney-client privilege equates to a de facto violation of federal law or the Constitution. *See* Dkt. #29 at 6.

Mr. Zellmer similarly objects on the basis that he cited *Massiah v. United States*. Dkt. #30 at 3 (citing 377 U.S. 201, 205–06 (1964)). Again, the Court finds Mr. Zellmer's reliance misplaced. *Massiah* holds that a defendant's own incriminating statements, obtained by federal agents through indirect and surreptitious interrogations without his counsel present, may not be used by the prosecution as evidence against him at trial. 377 U.S. at 206–07. *Massiah* does not support Mr. Zellmer's proposition here, which is that the State's seizure of his attorney-client privileged documents from prior civil cases as part of a valid search and the State's retention of those documents equates to a violation of his right to counsel.

Contrary to Mr. Zellmer's position, the Supreme Court has explicitly rejected a per se rule that government intrusion into attorney-client communications automatically gives rise to a Sixth Amendment violation of a defendant's right to counsel. Rather, there must be some indication that the prosecution actually used the evidence that might otherwise be inadmissible at trial, thereby resulting in prejudice. *Weatherford v. Bursey*, 429 U.S. 545, 552 (1977) ("[W]hen conversations with counsel have been overheard, the constitutionality of the conviction *depends on whether the overheard conversations have produced, directly or indirectly, any of the evidence offered at trial.*") (emphasis added); *see also United States v. Danielson*, 325 F.3d 1054, 1069 (9th Cir. 2003), *as amended* (May 19, 2003) ("We have construed *Weatherford* to mean that there is no

ORDER ADOPTING REPORT AND RECOMMENDATION
AND DISMISSING CASE - 7

Sixth Amendment violation unless there is prejudice. . . . mere government intrusion into the attorney-client relationship, although not condoned by the court, is not itself violative of the Sixth Amendment right to counsel.") (quoting *United States v. Irwin*, 612 F.2d 1182, 1186–87 (9th Cir. 1980)) (internal quotations omitted). Accordingly, the Court finds that Mr. Zellmer's claim does not rely on clearly established federal law as determined by the Supreme Court.

2. State Court Application of Federal Law

Mr. Zellmer also objects that the R&R failed to address the state court's application of *State v. Cory*, which he argues "stands for the proposition that under state privilege law . . . the State may not knowingly acquire privileged communications between counsel and the defendant." Dkt. #30 at 2 (citing 62 Wn.2d 271, 374–75 (1963)). The Washington state court of appeals, in contrast, read *Cory* as holding that intrusion into the attorney-client privilege requires reversal only when the intrusion is "deliberate and egregious," and that the "intrusion is deliberate and egregious when the intercepted communications *are those between the defendant and his counsel in the case being tried*." Dkt. #22-1 at 17 (emphasis added).

As an initial matter, in considering whether the state court's decision was contrary to clearly established federal law, the R&R appropriately limited its analysis to Supreme Court precedent. Dkt. #29 at 6 ("The Supreme Court has restricted 'clearly established Federal law' under 28 U.S.C. § 2254(d)(1) to 'the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state court decision.") (quoting *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (internal quotations omitted)). For that reason, Washington state cases such as *Cory* cannot support Mr. Zellmer's claim of constitutional error. *See Kernan v. Cuero*, 138 S. Ct. 4, 9 (2017) ("[A]s we have repeatedly pointed out, 'circuit precedent does not constitute clearly established Federal law, as determined by the Supreme Court.' Nor, of course, do state-court decisions,

ORDER ADOPTING REPORT AND RECOMMENDATION
AND DISMISSING CASE - 8

treatises, or law review articles.") (quoting *Glebe v. Frost*, 135 S. Ct. 429, 420 (2014) (per curiam)).

Moreover, even if the precedent set forth in *Cory* supplied federal law, Mr. Zellmer has not shown that the state court's application of the case was unreasonable. *Cory* established a rebuttable presumption of prejudice where the State engaged in intentional eavesdropping on conversations between a defendant and his legal counsel. *See* Dkt. #30 at 2 (citing *Cory*, 62 Wn.2d at 374–75). Mr. Zellmer argues that the intentional eavesdropping at issue in *Cory* is analogous to the State's actions here. *Id.* at 3 ("There is no legal distinction between the communications other than Cory's being simultaneous with his *live* discussions with counsel and Zellmer's being preserved in his *written* correspondence.") (emphasis in original). The Court finds Mr. Zellmer's analogy unavailing. Here, the State obtained attorney-client privileged documents from civil cases that preceded Mr. Zellmer's criminal case through a valid search and seizure process. The documents were then scanned and set aside by officers to avoid breaching confidentiality. As the state court identified, *Cory* expressly differentiated between privileged communications from the case being tried and communications related to other cases. Given these distinctions, the Court does not find the state court's application of *Cory* unreasonable.

3. <u>Reasonableness of State Court's Factual Determination</u>

Mr. Zellmer also objects to the R&R's conclusion that he failed to show that the state court adjudication was based on an unreasonable determination of the facts in light of the evidence. Dkt. #30 at 5. Referencing the evidence acquired through his Public Records Act lawsuits, Mr. Zellmer argues that state court did not have the "actual body of records" suppressed during discovery, trial and post-trial hearings and thereby failed to consider the "actual extent of the [S]tate's intrusion before, during, and after trial." Dkt. #30 at 5-6. He contends that the state court of appeal's refusal

ORDER ADOPTING REPORT AND RECOMMENDATION
AND DISMISSING CASE - 9

to consider new evidence, on its own, is sufficient to meet the standard under 28 U.S.C. 2254(d)(2) regarding unreasonable determination of the facts. *Id.* at 8.

In reviewing the reasonableness of the state court's factual determinations, the Court is limited to "the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *Holland v. Jackson*, 542 U.S. 649, 652 (2004). A federal court must "presume the state court's factual findings to be correct, a presumption the petitioner has the burden of rebutting by clear and convincing evidence." *Crittenden*, 624 F.3d at 950. Mr. Zellmer has not presented clear and convincing evidence demonstrating that the state court's factual determination was unreasonable. He does not dispute that the trial court excluded any allegedly privileged material from trial and, in fact, concedes that the Special Master "resolved any question as to the use of such documents in trial." Dkt. #27 at 17. His argument therefore relies on mere speculation as to whether the state investigators or attorneys "obtained an impermissible benefit" from acquisition and review of the seized documents "prior to the order appointing the special master." *Id.* at 18.

Both the state court of appeals and state supreme court commissioner identified this flaw in Mr. Zellmer's argument when they rejected his effort to expand the record to include evidence obtained through his public record requests. *See* Dkt. #22-5 at 23, 46. The R&R likewise found "no indication from the record that this was an unreasonable determination of the facts and there is no reason to follow Mr. Zellmer down the rabbit hole of speculating about the value of undisclosed evidence never used during trial." Dkt. #29 at 8. The Court agrees that Mr. Zellmer's conclusory argument relies on speculation as to the value prosecutors might have derived from undisclosed evidence. Accordingly, the Court finds that he has not shown that the state court's decision was based upon an unreasonable determination of the facts in light of the evidence.

ORDER ADOPTING REPORT AND RECOMMENDATION
AND DISMISSING CASE - 10

4. <u>Basis for Evidentiary Hearing</u>

Finally, Mr. Zellmer objects to the R&R's finding that he should not be afforded a state or federal evidentiary hearing on the evidence obtained through the public records requests. Dkt. #30 at 6. The federal habeas statute provides that an evidentiary hearing shall not be held on the claim unless the applicant shows that:

> (A) the claim relies on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e). Here, Mr. Zellmer objects that because the state court refused to consider new evidence acquired through his Public Records Act lawsuits, it failed to consider the "actual extent of the [S]tate's intrusion before, during, and after trial." Dkt. #30 at 6. Relying on *Cullen v. Pinholster*, Mr. Zellmer contends that his factual showing meets the standard for a hearing under Section 2254(e)(A)(ii) since he has shown that the State foreclosed consideration of hundreds of additional records withheld until half-way through his PRP. *Id.* at 6-7 (citing 563 U.S. 170, 181 (2011)). He argues that because the state court should have been given the "first shot" at reviewing such evidence, this Court should now permit him to further develop the factual basis of his claim either through a state or federal court evidentiary hearing. Dkt. #30 at 8 (citing *Pinholster*, 563 U.S. at 185).

Here, the state court was indeed given the "first shot" at reviewing the evidence and declined to hold an evidentiary hearing. As described above, the state court of appeals rejected on the merits Mr. Zellmer's argument that the State unconstitutionally intruded on the attorney-client relationship, finding that the "new evidence" Mr. Zellmer sought to present on reply—in the form

ORDER ADOPTING REPORT AND RECOMMENDATION
AND DISMISSING CASE - 11

of bankers boxes of privileged documents from Mr. Zellmer's civil cases—was both untimely and would not undermine its conclusion that there had been no deliberate or egregious intrusion by the State in the criminal case. *See* Dkt. #22-5 at 23. Likewise, in denying review of the PRP, the Washington state supreme court commissioner found Mr. Zellmer's argument that the State had obtained and used privileged information by way of the seized documents was "too speculative" to justify a reference hearing. *Id.* at 46. Accordingly, in rejecting Mr. Zellmer's claim on the merits, the state court was provided "the first opportunity to review [a] claim, and to correct any constitutional violation in the first instance" as contemplated by AEDPA. *Pinholster*, 563 U.S. at 185 (quoting *Jimenez v. Quarterman,* 555 U.S. 113, 121 (2009)) (internal quotations omitted). The state court was not obligated to hold an evidentiary hearing related to the public records request documents, and its decision to not hold a hearing on the matter does not render its factual determinations unreasonable. *See Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004) (Finding that an evidentiary hearing is not a pre-requisite to entitle a state court to AEDPA deference).

Furthermore, as set forth above, Mr. Zellmer has offered no cognizable grounds for habeas relief under § 2254(d). An evidentiary hearing at this juncture would therefore be futile. *Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013) ("[A]n evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief."). Accordingly, the Court finds that Mr. Zellmer is not entitled to a state or federal evidentiary hearing.

**C. Certificate of Appealability**

Lastly, Mr. Zellmer objects to the R&R's recommendation that this Court deny him a certificate of appealability ("COA"), claiming that he "has demonstrated a substantial showing of the denial of his constitutional right to counsel free from intrusion into confidential matters." Dkt. #30 at 10. A COA may only be issued where a petitioner has made "a substantial showing of the

denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To satisfy this standard, a prisoner must demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, the Court finds no basis on which a reasonable jurist would disagree that Mr. Zellmer has failed to demonstrate that the state court violated clearly established federal law or reached an unreasonable determination of the facts in light of the evidence. The Court likewise finds no basis on which a reasonable jurist would disagree that Mr. Zellmer is not entitled to a federal evidentiary hearing on a meritless claim. For these reasons, the Court agrees with the R&R's recommendation to deny issuance of a COA.

## CONCLUSION

The Court, having reviewed Plaintiff's complaint, the Report and Recommendation of the Honorable Judge Brian A. Tsuchida, United States Magistrate Judge, any objections thereto, and the remaining record, hereby finds and **ORDERS** as follows:

(1)  The Report and Recommendation is approved and adopted;

(2)  Petitioner's 28 U.S.C. § 2254 habeas petition is **DENIED,** and this case is **DISMISSED with prejudice**;

(3)  Petitioner is **DENIED** issuance of a certificate of appealability; and

(4)  The Clerk shall send a copy of this Order to the parties and to Judge Tsuchida.

DATED this 17 day of December 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE